IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DONALD CLARK,          ) | |
|                       ) | 8:06CV669 |
| Plaintiff,  ) | |
|                       ) | |
| v.                    ) | |
|                       ) | MEMORANDUM AND ORDER |
| LYMAN-RICHEY CORPORATION, ) | |
|                       ) | |
| Defendant.  ) | |

This matter is before the court on defendant's motion for summary judgment. Filing No. 34. Plaintiff filed this action alleging defendant discharged and retaliated against him in violation of the American with Disabilities Act ("ADA"), 42 U.S.C. § 12117. The court has carefully reviewed the record, the arguments of counsel, and the relevant caselaw. The court concludes that the motion for summary judgment should be granted.

## STANDARD OF REVIEW

On a motion for summary judgment, the question before the court is whether the record, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1326 (8th Cir. 1995). Where unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate. *Id.*

The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Therefore, if the defendant does not meet its initial burden with respect to an issue, summary judgment must be denied notwithstanding the absence of opposing

affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v. Doughboy Recreational Inc.*, 825 F.2d 167, 173 (8th Cir. 1987).

Once the defendant meets its initial burden of showing there is no genuine issue of material fact, the plaintiff may not rest upon the allegations of his or her pleadings but rather must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. *See* Fed. R. Civ. P. 56(e); *Chism v. W.R. Grace & Co.*, 158 F.3d 988, 990 (8th Cir. 1998). The party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts; he or she must show "there is sufficient evidence to support a jury verdict" in his or her favor. *Id.* Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Facts are viewed in the light most favorable to the nonmoving party, "but in order to defeat a motion for summary judgement, the non-movant party cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." *Carter v. St. Louis University,* 167 F.3d 398, 401 (8th Cir. 1999); *Ghane v. West,* 148 F.3d 979, 981 (8th Cir. 1998). In ruling on a motion for summary judgment, a court must not weigh evidence or make credibility determinations. *Kenney v. Swift Transp. Co.*, 347 F.3d 1041, 1044 (8th Cir. 2003).

Summary judgment should seldom be granted in discrimination cases. *Heaser v. Toro*, 247 F.3d 826, 829 (8th Cir. 2001). In passing on a motion for summary judgment, it is not the court's role to decide the merits. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986) (on motion of summary judgment, district court should not weigh evidence or attempt to determine truth of matter). The court must simply determine whether there exists a genuine dispute of material fact. *Bassett v. City of Minneapolis*, 211 F.3d 1097, 1107 (8th Cir. 2000).

## BACKGROUND[1]

Defendant is a Delaware Corporation doing business in Omaha, Douglas County, Nebraska. On April 4, 1994, defendant hired plaintiff as a driver of commercial vehicles. On October 19, 2003, plaintiff suffered a seizure in his bed in the middle of the night.[2] The paramedics arrived and transported plaintiff to the University of Nebraska Medical Center where they treated him with anti-seizure medication. On October 20, 2003, Dr. Ekaterini Markopoulou, an attending physician, diagnosed plaintiff as suffering from a seizure disorder. Filing No. 36 at 16. Plaintiff was told to follow up with Dr. Sanjay Singh in the epilepsy clinic. Filing No. 36 at 19. Following his discharge, on October 28, 2003, plaintiff filed for short-term disability indicating he had a "seizure disorder" and had experienced a "grand mal seizure." Filing No. 36, LRC - 0084. On October 29, 2003, plaintiff saw Dr. David Franco, a neurologist, who suspected that Clark had "complex partial epilepsy with recurrent episode of secondary generalization." Filing No. 36, p. 23. Dr. Franco further stated on January 26, 2004, that plaintiff had multiple episodes over the years which suggested partial seizures. Filing No. 45, Ex 22.

---

[1] The following facts were taken in part from the uncontroverted facts of the Pretrial Order in this case. Filing No. 55.

[2] Plaintiff had not experienced previous seizures, although the plaintiff had a concussion during his teenage years and recently had experienced strange smells.

A driver of commercial vehicles must possess a Department of Transportation ("DOT") certification following a fitness determination performed by a medical professional. 49 C.F.R. § 391.4l.  On October 28, 2003, Dr. Franco determined that plaintiff was disabled and noted "Risk of recurrent seizures limits driving/operating heavy machinery for 3 months."  Filing No. 42, Ex. 22.  On January 19, 2004, Dr. James Mayer of Occupational Health Services evaluated plaintiff and determined he could not resume commercial driving because the DOT has a five-year prohibition on recertification, following a seizure and treatment with an anti-seizure medication.  Filing No. 36, Ex. 8, LRC - 0204.  Dr. Franco concurred stating on January 26, 2004: "Clark's history is consistent with the diagnosis of epilepsy and therefore would not be qualified to drive a commercial motor vehicle according to the criteria set forth by the Federal Motor Carriers Safety Administration." Filing No. 45, Ex. 22.  Consequently, in January of 2004, three physicians had determined that plaintiff suffered from seizures that kept him from operating a commercial vehicle for five years.  Filing No. 36, Ex. 8; Filing No. 45, Ex. 22.

Plaintiff argues there is conflicting evidence that shows he does not have epilepsy or a seizure disorder.  Plaintiff contends that Dr. Franco first indicated that the single generalized seizure would restrict his driving for only three months.  Filing No. 36, Ex. 7 at 2. Dr. Franco released plaintiff to return to work on January 15, 2004, since he had been seizure-free since October 18, 2003.  Filing No. 42, Ex. 3 at LRC - 0195.  Plaintiff also argues that Dr. Salvatore Zieno, a primary care doctor, stated in a letter dated March 25, 2004, that there is no evidence of a seizure and it was most likely a mastoid infection. Filing No. 42, Pl. Ex. 4, at LRC 0215.  Plaintiff disagreed with the determination by Dr. Mayer, and he sought a second opinion.  Dr. Richard Andrews, a neurologist, told plaintiff

4

he did not have epilepsy. *Filing No. 42, Ex. 37.* Dr. Patricia Ryan, who initially saw plaintiff on October 24, 2003, stated in a letter dated August 18, 2004, that any possible seizure suffered by plaintiff was most likely provoked by sleep deprivation. Filing No. 42, Pl. Ex. 6 at LRC 0234. Dr. Ryan further opined that plaintiff could return to all normal activities and did not need medications. *Id.*

Plaintiff's driving certification expired on January 21, 2004. On November 12, 2004, defendant sent plaintiff a letter advising him that Dr. Mayer believed plaintiff was still ineligible for medical certification, and if he did not obtain the DOT medical certification card by December 10, 2004, he would be terminated as a driver. Filing No. 36, Ex. 10 at LRC-0277. Thereafter, plaintiff obtained a DOT certification card from nurse practitioner Ms. Blackwood and gave it to defendant on November 12, 2004. Because there then existed conflicting evidence, the defendant and plaintiff agreed to follow the DOT regulations and obtain a third-party medical evaluation. Filing No. 36, Ex. 16, LRC - 0289, Jon Finnegan letter dated November 19, 2004 ("we now have a conflict of medical evaluation and [we are] willing to work with you if you choose to appeal . . . as outlined in § 391.47 of the Federal Motor Carrier Safety Regulations. Please notify us of your intention to appeal no later than November 24, 2004." The parties used Dr. Singh who determined the plaintiff had epilepsy and had a 30% chance of a recurrent seizure. Plaintiff did not disagree about the choice to use Dr. Singh to render an additional opinion. Plaintiff argues now, however, this is not an impartial finding, as Dr. Singh was one of the initial treating physicians regarding plaintiff's short-term disability claim. 49 C.F.R. § 391.47(b)(3) (impartial specialist agreed to by the parties). However, again, plaintiff did

not object to the use of Dr. Singh, nor did plaintiff appeal the determination made by Dr. Singh.

Following the initial diagnosis by Dr. Mayer, defendant gave plaintiff a job in the construction area wherein he received the same rate of pay and benefits. He was laid off that job because it was a seasonal position. He did not thereafter apply for any other open seasonal position nor did he apply for winter work. He then obtained employment from March 2005 through September 2005 with Navarro Enterprises as an operator/dump truck driver earning $13.00 per hour.

On April 11, 2005, plaintiff filed a claim of disability discrimination with the Equal Employment Opportunity Commission ("EEOC"). In his charge to the EEOC, plaintiff states: "I had a seizure and Dr. Franco diagnosed me with epilepsy." Filing No. 36, No. LRC-0140. On April 19, 2005, defendant discharged plaintiff as a driver. Filing No. 36, Ex 13, Letter from Jon Finnegan, Human Resource Manager, to plaintiff. In this letter, Mr. Finnegan notes that Dr. Singh's determination means plaintiff cannot return to his job. The letter also indicated plaintiff could reapply for employment when he was medically qualified to do so. Defendant received the discrimination charge from the EEOC on April 22, 2005. On January 27, 2005, planintiff applied for a position as an inside sales/dispatcher/yard supervisor. Filing No. 36, Ex. 14, LRC - 0133. He did not receive this position as defendant did not have the same qualifications as the other applicants. On October 3, 2005, plaintiff began working for Omaha Public Power District where he operates a directional boring machine to install cable and duct lines. Plaintiff stated this a better job with better pay and benefits than his Lyman-Richey job. Plaintiff also had an ownership interest in Clark Concrete.

Plaintiff's brother, Dennis Clark, stated that following this EEOC filing, he tried to assist plaintiff on numerous occasions to regain employment with Lyman-Richey. Dennis Clark further states that Jeff Ford, operations manager, indicated he had a job for plaintiff prior to filing the lawsuit, but after the EEOC claim was filed, Mr. Ford indicated he had no position for the plaintiff. Filing No. 42, Dennis Clark Affidavit ("Aff."). Dennis Clark states that Jeff Ford, turned plaintiff down each time thereafter because of his disability or lack of work. *Id.* Defendant disputes these allegations by plaintiff's brother.

## DISCUSSION

### *A. ADA*

Plaintiff has filed a complaint under the ADA. Defendant contends that plaintiff is unable to make a prima facie case of discrimination under the ADA. The burden is on the plaintiff to show that (1) he was disabled within the meaning of the ADA, (2) he was qualified to perform the essential functions of the job with or without reasonable accommodations, and (3) he suffered adverse employment action because of the alleged disability. *See Nesser v. Trans World Airlines, Inc.*, 160 F.3d 442, 445 (8th Cir. 1998); *Webb v. Mercy Hosp.*, 102 F.3d 958, 959-60 (8th Cir. 1996). Summary judgment is proper if plaintiff fails to establish these claims. *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998). The burden then shifts to the defendant to articulate a legitimate reason for its decision to refuse to allow plaintiff to continue his position, and if the defendant is able to meet this burden, then the plaintiff must demonstrate that discrimination was the real reason for the employment decision. *Nesser*, 160 F.3d at 445.

Plaintiff first argues that defendant discriminated against him because of (1) an actual disability; (2) or, in the alternative, the defendant regarded him as having a disability; (3) or because the plaintiff had a record of a disability.

### 1. Disabled Person under the ADA

There are three ways a person can be disabled under the ADA: "actually," "record of," or "regarded as" disability. Under the "actually" disabled criterion, plaintiff must show that he has an impairment that substantially limits a major life activity. *Miller v. City of Springfield,* 146 F.3d 612, 614 (8th Cir. 1998); *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999); *Snow v. Ridgeview Med. Ctr.*, 128 F.3d 1201, 1206 (8th Cir. 1997).

Plaintiff argues that, as a matter of law, he is a not disabled person under the ADA. Defendant agrees that plaintiff does not have a disability within the meaning of the ADA, as moderate limitations are not necessarily a disability. *Taylor v. Nimock's Oil Co.*, 214 F.3d 957, 960 (8th Cir. 2000). Plaintiff can do other work. He just can't drive the concrete truck.

According to the ADA, a disability is "a physical or mental impairment that substantially . . . limits one or more of the plaintiff's major life activities." *See* 42 U.S.C. § 12102(2)(A)-(C). The ADA concerns itself with limitations that are substantial in nature. *Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 565 (1999). "Major life activities" have been defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." 29 C.F.R. § 1630.2(i); *Aucutt v. Six Flags over Mid-America, Inc.*, 85 F.3d 1311, 1319 (8th Cir. 1996); *Montandon v. Farmland Indus., Inc.*, 116 F.3d 355, 361 (8th Cir. 1997). "To 'substantially limit' a major life activity means to render an individual unable to perform a basic function that the average person

in the general population can perform," or to "significantly restrict as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to . . . an average person in the general population. . . ."[3] 29 C.F.R. § 1630.2(j)(ii).  *See Samuels v. Kansas City Missouri School*, 437 F.3d 797, 801 (8th Cir. 2006).  Both the severity and the duration of an impairment are factors to consider in order to determine if an impairment substantially limits a major life activity.  *See Aucutt,* 85 F.3d at 1319.  The court agrees with the defendant.  Plaintiff has not shown that he is disabled within the meaning of the ADA.  The court finds no evidence in the record of an inability to perform a major life activity.  The court finds plaintiff is not actually disabled under the ADA.  His only restriction is his inability to drive a truck, and there is no showing he cannot perform any other major life activities.

In the alternative, plaintiff says that the company regarded him as disabled. However, defendant contends that this condition is not disabling, and in fact, defendant gave him an alternative job.  "It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA."  *Wenzel v. Missour-American Water Co.*, 404 F.3d 1038, 1041 (8th Cir. 2005) (citation omitted).  There is no showing by the plaintiff that defendant perceived the impairment and considered it to be substantially limiting of a major life activity, other than plaintiff's ability to drive the concrete trucks.  *Wooten v. Farmland Foods,* 58 F.3d 382, 385

---

[3] The following factors are considered in determining whether a person is substantially limited in a major life activity: "(1) the nature and severity of the impairment, (2) its duration or anticipated duration, and (3) its long-term impact."  *Snow v. Ridgeview Med'l Ctr.*, 128 F.3d 1201, 1206-07 (8th Cir. 1997).

(8th Cir. 1995). Plaintiff may not be suited for the job of driving concrete trucks, but that does not mean he is disabled nor was he regarded as disabled by this defendant.

In the alternative, plaintiff says that the company had a record of his disability. There is no evidence that has been submitted to the court in this case to support such an argument. "In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities." *Weber v. Strippit, Inc.,* 186 F.3d at 915 (8th Cir. 1999) (citing 29 C.F.R. § 1630.2(k)). In order for the plaintiff to show a record of disability, he must establish that his past record of impairments substantially limited at least one major life activity. *Land v. Baptist Med Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999). As previously stated, no evidence has been presented that this plaintiff had a record of impairment that substantially limited a major life function. 29 C.F. R. § 1630.2(k) and (l). I find that plaintiff has not established a record of disability. No evidence exists that indicates defendant ever saw medical records of or any other records that would indicate a disability existed, other than plaintiff's inability to drive a truck. *See Costello v. Mitchell Public School Dist*., 266 F.3d 916, 924 (8th Cir. 2001) (records did not show a substantially limiting impairment, so no genuine issue of fact and summary judgment properly granted).

Accordingly, this court concludes that there is no evidence in this record that would support a finding of disability in this case. Defendant has shown that plaintiff was not permitted to drive defendant's truck. This decision was fully supported by the medical evidence. Further, defendant received another position with the defendant and did not

thereafter apply for further seasonal positions. However, for purposes of the record, the court will address the remaining two elements as though plaintiff had a disability.

### 2. Qualified Individual under the ADA

Plaintiff argues that as a matter of law he could perform the essential functions of the job. In the alternative, plaintiff argues that there is a genuine issue of material fact as to whether defendant offered him reasonable accommodations to perform the job. In response, defendant contends that plaintiff was unable to perform the essential functions of the job and that he never requested accommodations.

Under the ADA, a "qualified individual" is an individual who, "with or without reasonable accommodation, can perform the essential functions[4] of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). The Eighth Circuit articulated the following factors to consider when determining the essential functions of a position:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs.

---

[4] The EEOC guidelines define essential functions as:

(1)  In general. The term essential functions means the fundamental job duties of the employment position the individual with a disability holds or desires. The term "essential functions" does not include the marginal functions of the position. . . .

(3)  Evidence of whether a particular function is essential includes, but is not limited to:
(i) The employer's judgment as to which functions are essential;
(ii) Written job descriptions prepared before advertising or interviewing applicants for the job;
(iii) The amount of time spent on the job performing the function. . . .

29 C.F.R. § 1630.2(n).

*Heaser v. The Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001); *see also Maziarka v. Mills Fleet Farm, Inc.,* 245 F.3d 675, 680 (8th Cir. 2001).  Ultimately, the plaintiff's work performance must "meet the employer's legitimate job expectations."[5]  *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999).

There is no dispute that the essential functions of the job in question require driving a truck, and a driver must possess a DOT certification following a commercial driver fitness determination performed by a competent medical professional.  49 C.F.R. § 391.41.  The medical evidence, in conjunction with the Department of Transportation regulations discussed in Section D, *supra,* supports defendant's decision that plaintiff cannot perform the essential elements of his truck driving job.  A driver of a commercial vehicle who has a history of epilepsy cannot drive the vehicle for ten years, and a driver who has a single episode cannot drive a commercial vehicle for five years.  49 C.F.R. § 391.47(b)(8).

The ADA requires an employer to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of the [employer]."  42 U.S.C. § 12112(b)(5)(A).  Reasonable accommodations may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or

---

[5]The determination whether the plaintiff was a "qualified individual" must be made as of the date(s) of the challenged employment decision(s).  *See Browning v. Liberty Mut. Ins. Co.*, 178 F.3d 1043, 1048-1049 (8th Cir. 1999).  Further, the employee cannot rely on "past performance to establish that [h]e is a qualified individual without accommodation when the employer has produced undisputed evidence of diminished or deteriorated abilities."  *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999).

interpreters, and other similar accommodations. . . ." 42 U.S.C. § 12111(9)(B). However, an employer cannot be required to "change the essential nature of the job." *Mole,* 165 F.3d at 1218. For example, "[a]n employer is not required to hire additional employees or redistribute essential functions to other employees." *Id.; see also Fjellestad v. Pizza Hut of America, Inc.*, 188 F.3d 944, 949 (8th Cir. 1999). The statute stresses the importance of "the employer's judgment as to what functions of the job are essential." 42 U.S.C. §1212(8).

Initially, a plaintiff must prove that he informed the employer that an accommodation was needed.[6] *See id.* ("it is the responsibility of the individual with the disability to inform the employer that an accommodation is needed"); *see Mole,* 165 F.3d at 1217 (employee has the initial burden of requesting accommodation). Then, the plaintiff "is only required to make a facial showing that a reasonable accommodation [was] possible." *Fjellestad,* 188 F.3d at 950. If the plaintiff succeeds, "the burden of production shifts to the [defendant] to show that he is unable to accommodate the [plaintiff]." *Id.*

The record reflects that plaintiff's impairment prevented him from performing essential job functions. The court finds that plaintiff's impairment prevented him from safely driving concrete truck vehicles. For this reason, plaintiff was unable to perform the essential function of operating certain automotive equipment. *See Lloyd v. Hardin County, Iowa*, 207 F.3d 1080, 1084 (8th Cir. 2000) (employee's request to be assigned to a modified vehicle amounted to a reallocation of an essential function of the job). The court

---

[6] After the employee informs the employer that an accommodation is needed, the "failure of an employer to engage in an interactive process to determine whether reasonable accommodations are possible is prima facie evidence that the employer may be acting in bad faith." *Fjellestad,* 188 F.3d at 952.

13

finds that because driving a truck is an essential part of this job and no evidence has been submitted that defendant could make a reasonable accommodation for plaintiff, that plaintiff is not qualified to perform this job. "Under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process." *Battle v. United Parcel Service, Inc.*, 438 F.3d 856, 864 (8th Cir. 2006).

### 3. Adverse Employment Action

There is no doubt plaintiff lost his job. However, defendant argues it was not because of a disability, but because he could not perform the essential functions of his job safely. Again, the defendant has articulated a legitimate and nondiscriminatory reason for the discharge. Plaintiff has offered no evidence that such concern was merely a pretext for intentional discrimination. Defendant believed that plaintiff posed a threat to himself and to others, that he could not get a driving certification from the DOT, a reasonable accommodation would not suffice, and the law permits such a determination by the employer. 29 C.F.R. § 1630.2(r).

This court concludes that no reasonable jury could find that plaintiff was (1) disabled under the ADA; (2) a qualified individual under the ADA because of his inability to perform the essential functions of the job with or without accommodation; or (3) that a reasonable accommodation could have been made without changing the essential functions of the plaintiff's job. The evidence before the defendant indicated suspected epilepsy, plaintiff's DOT certification had expired, and plaintiff had been treated with anti-seizure medication. Based on these facts, defendant believed plaintiff could not operate a commercial vehicle. 49 C.F.R. § 391.41(b)(8) (employee cannot drive commercial vehicle if he has epilepsy,

or is treated with an anti-seizure medication).  Although Drs. Zieno, Holeyfield,[7] and Andrews believed plaintiff did not have epilepsy, they did not provide the required DOT certification which would have permitted plaintiff to operate a commercial vehicle.  It is true that the evidence regarding epilepsy was conflicting.  However, Dr. Singh found plaintiff had epilepsy and a 30% chance of another seizure.  Plaintiff chose not to appeal this finding.  Further, on plaintiff's short-term disability form, he filed on the basis of a seizure disorder.  Plaintiff was only limited from performing the single job of truck driver. The defendant has clearly met his burden of showing legitimate reasons for termination of the plaintiff.  The plaintiff has failed to produce any evidence of pretext.  Accordingly, defendant's motion for summary judgment is granted.

### *B. Retaliation*

The ADA also provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a). Without direct evidence of a retaliatory motive, retaliation claims (whether under Title VII, the ADA, or the ADEA) are analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973).  *Stewart v. Indep. Sch. Dist. No. 196,* 481 F.3d 1034, 1043 (8th Cir. 2007).  Under that framework, the initial burden is on the plaintiff to establish a prima facie case, consisting of evidence: (1) that he or she engaged in statutorily protected activity; (2) an adverse employment action was taken against him

---

[7]Dr. Holeyfield was a general practitioner who believed plaintiff had a sinus condition.  Filing No. 36, E1: 58-8-13.  Dr. Holeyfield referred plaintiff to Dr. Zieno.

or her; and (3) a causal connection exists between the two events. *Id.* If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to show a nonretaliatory reason for the adverse employment action. *Id.* If the defendant can show a legitimate, nonretaliatory reason for its actions, the burden returns to the plaintiff who is then obliged to present evidence that (1) creates a question of fact as to whether defendant's reason was pretextual; and (2) creates a reasonable inference that defendant acted in retaliation. *Id.*

"An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." *Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) (alteration in original). A termination two weeks after a claim of discrimination is "close enough to establish causation in a prima facie case." *Peterson v. Scott County*, 406 F.3d 515, 525 (8th Cir. 2005).

In this case, plaintiff argues he was terminated from his employment because he filed a claim with the EEOC. Defendant argues, and the court has already found, that plaintiff was terminated because of evidence of a seizure disorder. Plaintiff claims he did not apply for a different seasonal position with the defendant because of an allegedly single remark made by an employee of defendant to plaintiff's brother regarding defendant's dislike for people who file claims against them. Plaintiff claims for that reason and that reason alone he did not apply for any other jobs with the defendant. According to the defendant, this scenario did not happen. Defendant contends that it terminated plaintiff before it ever became aware of the protected activity, filing with the EEOC. In fact,

defendant claims that its employee told plaintiff's brother that defendant had a position as a concrete finisher for the plaintiff.

The court agrees. There is no evidence that plaintiff attempted to obtain a position with the defendant following the filing of the EEOC charge. He never filed an application for seasonal employment, other than the application for a an inside sales/dispatcher/yard supervisor on January 27, 2005. There is no evidence that defendant talked with anyone about a job and was told they would not hire him. The court concludes that the plaintiff has failed to offer sufficient evidence from which a jury could conclude that any retaliation existed as a result of plaintiff's filing his EEOC charge.

### *C.  Failure to File This Lawsuit Within Ninety Days of EEOC Determination*

The EEOC issued a right to sue letter on July 12, 2006. It appears plaintiff received the right to sue letter on July 17, 2006. Plaintiff filed his lawsuit on October 19, 2006. Plaintiff's wife contends that she received the right to sue letter and immediately sent it to her husband's attorney. Filing No. 42, Ex. 1, Andrea Clark Aff. Defendant contends that plaintiff failed to file her lawsuit within ninety days of receipt of her right to sue letter from the EEOC. Defendant states plaintiff received the right to sue letter from the EEOC by July 17, 2006, and failed to file this lawsuit for 94 days thereafter. "Generally, the ninety-day filing period begins to run on the day the right to sue letter is **received** at the most recent address that a plaintiff has provided the EEOC." *Hill v. John Chezik Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989) (emphasis added). Filing of the lawsuit is not jurisdictional, and certain circumstances justify equitable tolling of the statute. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 150-51 (1984) (equitable tolling where claimant receives inadequate notice; motion for appointment of counsel is pending; court has led plaintiff to

believe she has done that which is required of her; or affirmative misconduct on the part of a defendant lulled plaintiff into inaction). *See also* 42 U.S.C. § 2000e-5(f)(1). Failure to allege the date of receipt of the right to sue letter and "his conclusory allegation that his complaint was timely filed is insufficient to preclude dismissal." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 379 (5th Cir. 2002). When the receipt date is in dispute, courts have presumed different dates ranging from three to seven days. *Id. See also Lozano v. Ashcroft*, 258 F.3d 1160, 1165 (10th Cir. 2001) (three or five days for receipt of the right to sue letter); *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 855 F.2d 324, 326 (6th Cir. 1988) (five days mailing for receipt of right to sue letter). This is a close question. If the court allows a seven-day mail time, the case is timely filed. The court, though, would be unlikely to find that such a time extension is appropriate. However, in view of the fact that the court is granting summary judgment on the merits herein, the failure to appeal within the confines of the 90-day requirement need not be further addressed, and the court will make no determination as to this issue.

### D. Exhaustion DOT

Defendant contends that plaintiff failed to exhaust his administrative remedies with regard to the DOT regulations. Absent compliance with these remedies, argues defendant, plaintiff should not be entitled to bring the ADA claim in federal court. The defendants had two physicians who believed plaintiff could not drive a commercial vehicle. Plaintiff had a nurse practitioner who certified him as capable of driving commercial vehicles. Because of the conflict, Dr. Singh was asked to issue findings, and he found the defendant has epilepsy and a 30% chance of a recurrent seizure. Plaintiff did not appeal the adverse findings of Dr. Singh, although the DOT permits him to do so. 49 C.F.R. § 391.47(b)(2).

Defendant argues that plaintiff cannot pursue a claim under the ADA because of his failure to appeal under the administrative remedies provided in the DOT regulations. *See Harris v. P.A.M. Transport, Inc.*, 339 F.3d 635, 638 (8th Cir. 2003). The court agrees. Plaintiff should have appealed the findings of Dr. Singh. Consequently, on this basis alone the case must be dismissed. *Harris*, 339 F.3d at 638.

THEREFORE, IT IS ORDERED that defendant's motion for summary judgment, Filing No. 34, is granted. A separate judgment will be entered in conjunction with this Memorandum and Order.

DATED this 10th day of April, 2008.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge